UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WAYNE LAMARR HARVEY #147594,

        Plaintiff,

v.

HEIDI WASHINGTON, et al.,

        Defendants.
_____/

Case No. 2:18-cv-00067

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Wayne Lamarr Harvey pursuant to 42 U.S.C. § 1983. Harvey alleges that that he is a paraplegic and quadriparetic,[1] with "upper body ability and blindness." Harvey states that he is susceptible to blood clotting and aneurysms. Harvey is bedridden and physically vulnerable. Harvey asserts that he was subject to a wide range of abusive conduct by Defendants from 2014 through 2016 while he was confined at the Marquette Branch Prison (MBP).

Harvey claims that, on February 19, 2014, Defendant James told him that he had gone down "the wrong road" in response to Harvey's questions regarding his treatment for blood clots. (ECF No. 1, PageID.6.) In addition, Harvey claims that,

---

[1] An individual who is quadriparetic has muscle weakness in all four extremities. https://www.merriam-webster.com/medical/quadriparesis.

on February 27, 2014, Defendant James assaulted him by striking him with folded documents. (*Id*.)  Harvey also says that, on March 19, 2014, Defendant James threw documents at Harvey, striking him on the legs. (*Id*.)

Harvey alleges that Defendant Gluesing repeatedly pulled on a catheter tube attached to Harvey's penis, causing Harvey to scream and object that Defendant Gluesing was hurting him.[2] (*Id*.)  Defendant Gluesing refused to stop until Harvey called for the unit officer, at which point Defendant Gluesing ran from the room.

Harvey says that, on November 14, 2015, he requested a protection order to prevent Defendants James and Gluesing from having any physical contact with him. Harvey also requested an investigation into the assaultive behavior of Defendants James and Gluesing.  Harvey says his requests were ignored.  Harvey alleges that Defendant Kimsel stated that he had no interest in protecting him from Defendant Gluesing.

Harvey furthermore alleges that, during July of 2016, Defendant James placed Defendant Gluesing in the infirmary area on days when Nurse Hedlund indicated Harvey would likely need assistance using the bed pan to have a bowel movement. Harvey states that Nurse Hedlund deliberately traded job assignments with Defendant Gluesing, knowing that Harvey would not accept help from Defendant Gluesing, which would force Harvey to have a bowel movement in his bed. (*Id*. at PageID.7.)

---

[2]   Plaintiff does not provide the dates in his complaint that Defendant Gluesing allegedly pulled his catheter tube.  Plaintiff's **grievance MBP15-100-1865-17A** asserted that on October 17, 2015, Defendant Gluesing pulled the catheter tube.

Harvey also asserts that Defendant James kept him at MBP for an extended time. Harvey alleges that Defendant LaForest sexually assaulted him and came to work intoxicated. Finally, Harvey claims that Defendant Gluesing was responsible for dropping Harvey on the floor. Harvey asserts that he required emergency surgery to repair the resulting neck injury. (*Id*.)

Defendants James, Kimsel, and Gluesing have filed motions for summary judgment.[3] (ECF Nos. 14 and 22.) The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss without prejudice the following: (1) all of Plaintiff's claims against Defendant Kimsel, (2) Plaintiff's claim that Defendant Gluesing dropped Plaintiff causing a neck injury, (3) Plaintiff's claims that Defendant James struck Plaintiff with documents on February 27, 2014, and March 19, 2014, and (4) Plaintiff's claim that, during July 2016, Defendant James scheduled Defendant Gluesing to work on days that Plaintiff needed his bed pans cleaned.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

---

[3]    Defendant LaForest has not moved for summary judgment.

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

4

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his

or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

7

Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

## Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Denial of medical care | James | Feb. 19, 2014 |
| Assault with documents | James | Feb. 27, 2014 |
| Assault with documents striking legs | James | March 19, 2014 |
| Pulled catheter tube | Gluesing | Oct. 17, 2015 |
| Requested protection from James and Gluesing | Kimsel | Nov. 14, 2015 |
| James Purposely scheduled Gluesing to work in the infirmary on days Harvey needed bed pans emptied | James | July of 2016 |
| Kept Harvey confined at MBP | James | undated |
| Sexual assault | LaForest | undated |
| Dropped Harvey to the floor causing injury | Gluesing | undated |

## Grievances Identified by Defendants

In their motion for summary judgment, Defendants James, Kimsel, and Gluesing identified a number of grievances that Harvey filed with MDOC. They claim that a review of these grievances will demonstrate that Harvey has failed to exhaust his administrative remedies. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-14-02-389-17A[5] | James | Denial of medical care | Feb. 19, 2014 | Denied | Denied | Denied |
| MBP-15-100-1865-17A[6] | Gluesing | Pulled on Catheter | Oct. 17, 2015 | Denied | Denied | Denied |
| MBP-15-0300-481-28A[7] | James | Informed Plaintiff that he was at MBP as punishment | March 17, 2015 | Rejected as duplicative[8] | Rejected as duplicative | Rejected as duplicative |
| MBP-15-300-467-12E2[9] | James | Harassment and assault | March 17, 2015 | Denied | Denied | Denied |
| MBP-15-02-0273[10] | James, Rose, Borges | Failure to provide basic medical care | Feb. 1, 2015 | Denied | Denied | Rejected as untimely |
| MBP-02-1871-12E3[11] | Gluesing and James | Fears for life, unnecessary for Gluesing to enter his cell, and | Dec. 3, 2015 | Denied | Denied | Rejected as untimely |

---

[5] ECF No. 15-9, PageID.653-657.
[6] ECF No. 15-9, PageID.658-661.
[7] ECF No. 15-9, PageID.662-664.
[8] Duplicative to grievance MBP-15-0300-467-12E2
[9] ECF No. 15-9, PageID.665-670.
[10] ECF No. 15-9, PageID.671-674.
[11] ECF No. 15-9, PageID.675-678.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| | | harassment by Gluesing and James | | | | |
| MBP-15-11-01944-17A[12] | Gluesing | Entered cell to intimidate and "impose a menacing presence" | Oct. 29, 2015 | Denied | Denied | Denied |

## Analysis

**1. Exhausted Claims**

First, Defendant James concedes that Harvey exhausted his claim regarding lack of medical treatment on February 19, 2014, as asserted in **Grievance MBP-14-02-389-17A.**

Second, Defendant Gluesing agrees that Harvey exhausted his claim regarding the pulling of his catheter on October 17, 2005, in **Grievance MBP-15-100-1865-17A.**

Third, Harvey exhausted a claim that Defendant James told him he was being confined at MBP as a form of punishment in **grievance MBP-15-0300-481-28A.** Harvey alleges in his grievance that the statement was made on March 17, 2015. Harvey arguably exhausted his undated allegation in his complaint that Defendant James kept him at MBP as a form of punishment.

---

[12] ECF No. 15-9, PageID.679-682.

### 2. Unexhausted Claims

Harvey failed to exhaust his claims that Defendant James assaulted him on February 27, and March 19, 2014, by striking him with documents.

In addition, Harvey failed to name Defendant Kimsel in a grievance and failed to raise the issue that Defendant Kimsel ignored his request for protection on November 14, 2015, from Defendants James and Gluesing.  Thus, Harvey's claims against Defendant Kimsel are unexhausted.

Harvey failed to grieve his claim alleging that Defendant James, during the month of July 2016, purposely scheduled Defendant Gluesing to work in the infirmary on days that Harvey would need help with his bed pans.  Defendant James knew that Harvey would refuse to allow Defendant Gluesing to help.  Thus, this claim is unexhausted.

Similarly, Harvey failed to exhaust his claim that Defendant Gluesing dropped him causing an injury.

### Recommendation

The undersigned respectfully recommends that this Court dismiss the following claims without prejudice:

1. Harvey's claims that Defendant James assaulted him by striking him with documents on February 27, and March 19, 2014;

2. Harvey's claim that Defendant James purposely scheduled Defendant Gluesing to work in the infirmary when Harvey needed help during the month of July 2016;

3.  Harvey's claim that Defendant Kimsel failed to personally investigate his requests for protection on November 14, 2015 (this will dismiss Defendant Kimsel); and

4.  Harvey's claim that Defendant Gluesing dropped him causing injury to his neck.

If the Court adopts this recommendation, the following claims will remain:

1.  Harvey's claim that Defendant James denied him medical care on February 19, 2014;

2.  Harvey's claim that Defendant James kept him confined at MBP as punishment;

3.  Harvey's claim that Defendant Gluesing pulled his catheter tube on October 17, 2015; and

4.  Harvey's claim that Defendant LaForest sexually assaulted him.


Dated:   July 3, 2019                                /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).