UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WAYNE HARVEY #147594,                     Case No. 2:18-cv-00067

       Plaintiff,                        Hon. Gordon J. Quist
                                          U.S. District Judge

   v.

HEIDI WASHINGTON, et al.,

       Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I.    **Introduction**

Plaintiff Wayne Harvey, who is a prisoner in the Michigan Department of Corrections (MDOC), is a partially blind, paraplegic, and quadriparetic[1] person with upper body ability that is susceptible to blood clotting and aneurysms.  Harvey, through counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983.  The only remaining Defendants in this action are Registered Nurses (RN) Brenda James, Gabriel Gluesing, and Christa LaForest.[2]

Harvey alleges that, while he was incarcerated at Marquette Branch Prison (MBP), RN James violated his Eighth Amendment rights (1) by failing to provide Harvey with necessary medical care and (2) by preventing his transfer to another

---

[1]    An individual who is quadriparetic has muscle weakness in all four extremities. Medical Definition of Quadriparesis, Merriam-Webster, https://www.merriam-webster.com/medical/quadriparesis (last visited Oct. 23, 2020).

[2]    RN LaForest has not been served and has not waived service.

MDOC medical facility.  Harvey alleges that RN Gluesing inappropriately jerked or tugged on his catheter.  Harvey sues RNs James and Gluesing in their official and personal capacities.  He seeks injunctive relief and damages.

This Report and Recommendation (R&R) addresses a motion for summary judgment filed by RNs James and Gluesing.  (ECF No. 51.)  They argue that they are entitled to summary judgment for several reasons.  First, they argue that Harvey cannot establish that RN James was deliberately indifferent to Harvey's medical needs.  Second, they argue that Harvey failed to establish that RN James was personally involved in a decision that prevented Harvey being transferred to a different facility.  Third, they assert that Harvey cannot establish that RN Gluesing violated his rights under the Eighth Amendment by pulling on Harvey's catheter. Fourth, they assert that because Harvey was transferred to a different facility, his requests for injunctive relief are moot and, accordingly, that his claims against them in official capacities must be dismissed.  And finally, they assert that Harvey's claims are barred by the doctrine of qualified immunity.

The undersigned concludes: (1) that Harvey's request for injunctive relief is moot and, as a result, his official capacity claims are barred by the Eleventh Amendment, (2) that there is a genuine issue of fact as to whether RN James was personally involved in preventing Harvey being transferred, (3) that there is no genuine issue of fact that RN James was not deliberately indifferent to Harvey's necessary medical needs, (4) that there is a genuine issue of fact as to whether RN Gluesing violated Harvey's Eighth Amendment rights by pulling on Harvey's

catheter, and (5) that the doctrine of qualified immunity bars Harvey's claims against RN James, but not his claim against RN Gluesing.

Based on these conclusions, the undersigned respectfully recommends that the Court dismiss all of Harvey's against RN James and his Eighth Amendment claim against RN Gluesing in his official capacity.  The undersigned also respectfully recommends that the Court dismiss all Harvey's claims against RN LaForest without prejudice.[3]  If the Court adopts this recommendation, only Harvey's claim against RN Gluesing in his personal capacity will remain.

## II.    Additional Relevant Procedural History

On May 3, 2018, Harvey filed this matter in federal court.  (ECF No. 1.)  Harvey alleged that 19 Defendants violated his Eighth Amendment rights while Harvey was housed at MBP.

On September 10, 2018, the Court issued a screening opinion and order that dismissed 15 Defendants.  (ECF Nos. 5, 6.)

On February 25, 2019, Defendants James and Kimsel filed a summary judgment motion and supporting brief based solely on Harvey's failure to properly exhaust his administrative remedies with respect to his claims against them.  (ECF No. 14, 15.)  On March 28, 2019, Defendant Gluesing filed a summary judgment

---

[3]    In the opinion of the undersigned, RN LaForest should be dismissed without prejudice under Fed. R. Civ. P. 4(m).  Rule 4(m) provides that the Court must, after providing plaintiff with notice, either dismiss or order service within a specified time frame against a Defendant who has not been served within 90 days after the complaint was filed.  More than two years have passed since Harvey filed his complaint and RN LaForest has still not been served.

motion and supporting brief that also asserted Harvey failed to exhaust his administrative remedies.  (ECF Nos. 22, 23.)

On July 3, 2019, the undersigned issued a R&R that addressed both motions and recommended that the Court dismiss all of Harvey's claims, except for Harvey's claims against RNs James, Gluesing, and LaForest.  (ECF No. 31.)  The Court adopted the R&R and dismissed all the recommended claims without prejudice.  (ECF No. 32.)

On September 10, 2019, the Court appointed Attorney Solomon Radner to represent Harvey.  (ECF No. 37.)

On February 3, 2020, Defendants counsel filed a motion and supplemental brief that requesting to withdraw as the counsel for RN LaForest.  (ECF Nos. 44, 45.) RN LaForest left MDOC's employment prior to the initiation of this lawsuit and MDOC had no forwarding address to contact RN LaForest.  The Court granted the motion.  (ECF No. 50.)

## III.    Summary of Harvey's Remaining Claims

Harvey's remaining claims against RNs James and Gluesing are summarized in the table below.

| # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|-----------|-------|-----------------------------------|--------------------|
| 1 | RN James (Personal and Official Capacity) | 8th Amendment Deliberate Indifference | 2/19/2014 | In response to Harvey's questions about his blood clotting treatment, RN James informed Harvey that Harvey had gone down "the wrong road" and did not provide the prescribed treatment.  (ECF No. 1, PageID.6.) |

| # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 2 | RN James (Personal and Official Capacity) | 8th Amendment Cruel and Unusual Punishment | 2/19/14 to 7/1/16 | RN James exercised her authority to prevent Harvey from being transferred to a different MDOC facility that could better handle his healthcare issues. (ECF No. 1, PageID.6-7.) |
| 3 | RN Gluesing (Personal and Official Capacity) | 8th Amendment Cruel and Unusual Punishment | 10/17/2015[4] | RN Gluesing caused Harvey a great deal of physical pain by maliciously pulling on Harvey's catheter tube. |

## IV.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[4]    In Harvey's complaint, Harvey does not provide the date when RN Gluesing allegedly pulled his catheter tube. However, Harvey's grievance **MBP15-100-1865-17A** asserts that on October 17, 2015, Defendant Gluesing pulled the catheter tube.

**V.    Moot Requests for Injunctive Relief and the Eleventh Amendment's Protections**

The undersigned concludes that Harvey's transfer to Duane Waters Health Center (DWH) facility has rendered moot his requests for injunctive relief. (ECF No. 1, PageID.8 (asking the Court to order (1) a restraining order against RNs Gluesing and James, (2)  proper medical treatment regardless of what MDOC facility in which he is housed, and (3) a detail that would entitle Harvey to a single person cell).)  When a prisoner-plaintiff requests injunctive relief for issues at a particular institution, and is then transferred to another institution, the prisoner's requests for injunctive relief become moot. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  On October 24, 2017, Harvey was transferred from MBP to DWH.  (ECF No. 52-2, PageID.820-821.)

DWH "houses prisoners whose medical needs cannot be met at other correctional facilities within the state."  Michigan Department of Corrections, *Health Care*,    https://www.michigan.gov/corrections/0,4551,7-119-9741_11776---,00.html (last visited Nov. 15, 2020).  As a result, the undersigned concludes that Harvey's requests for injunctive relief are moot.  First, Harvey is now housed at a facility where RNs Gluesing and James are not present.  Second, Harvey is housed in the one MDOC facility that can provide a full range of medical services that the others cannot.  Third, there is no evidence in the record to suggest that Harvey's medical needs and requests have not been met since his move to DWH.

Therefore, Harvey's official capacity claims against RNs James and Gluesing are barred by the Eleventh Amendment.  The Supreme Court has held "that neither

6

a State nor its officials acting in their official capacities are 'persons' under § 1983."

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). Here, in addition to the now-moot requests for injunctive relief, Harvey seeks money damages, costs and fees from Defendants in their official capacities. This part of Harvey's suit is barred by the Eleventh Amendment.

A Plaintiff may sue a state official in his official capacity in limited circumstances. "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008); *see Abick v Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)

(holding that the State of Michigan has not consented to suit).  Only the second exception could have been at issue here.

"Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id.*; *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law. . .  Retroactive relief is barred by the Eleventh Amendment").  Because Harvey's requests for injunctive relief are moot and no longer at issue, Harvey's official capacity claims are barred by the Eleventh Amendment.

## VI.    RN James's Personal Involvement in Preventing Harvey's Transfer to a Different MDOC Facility

For the following reasons, the undersigned concludes that there is evidence that establishes a genuine issue of fact as to whether RN James was personally involved in conduct that prevented Harvey from transferring out of MBP (Claim 4: Cruel and Unusual Punishment under the Eighth Amendment).

Harvey alleges that RN James exercised her authority by subjecting him to poor medical care and unsatisfactory living conditions, and by preventing his transfer to a different facility.  (ECF No. 1, PageID.7.)  Defendants argue that Harvey's claim should be dismissed because Harvey failed to show that RN James was personally involved in any decision preventing Harvey being transferred to another facility. (ECF No. 52, PageID.806-807.)  Due to the conflicting evidence in the record, the undersigned disagrees.

During Harvey's deposition, he testified that RN James informed him that she was recording inaccurate information in his medical reports in order to influence and prevent Harvey's transfer to a different facility.  (ECF No. 53-1, PageID.937-39.) Harvey stated that this information would have prevented his transfer.  Defendants contend that "[t]here is no evidence that James has the ability to keep Harvey confined at MBP as punishment" and challenge the accuracy and admissibility of Harvey's deposition testimony.  (ECF No 52, PageID.807.)  Defendants note that only the Patient Services Coordinator has authority to move a patient.  (*Id*.)

Defendants' argument misses the point.  Harvey did not testify that he knew that RN James independently possessed the authority to transfer Harvey to a different facility.  Instead, he asserted that RN James influenced the decision by including false information in his medical record.  (ECF No. 53-1, PageID.937-39.)

It is the opinion of the undersigned that there is sufficient evidence in the record to establish a genuine issue of fact as to whether RN James exercised her authority to prevent Harvey being transferred.

## VII.   Eighth Amendment Deliberate Indifference Claim Against RN James

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious

9

medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

11

But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir.

1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

For the following reasons, the undersigned concludes that Harvey did not establish a genuine issue of fact as to whether RN James was deliberately indifferent to Harvey's medical needs.  The parties largely agree on the facts surrounding the claim.  The parties do not dispute the objective component – whether Harvey's medical need was sufficiently serious and obvious.  The parties also do not dispute that RN James visited Harvey on February 19, 2014 to provide him medical treatment, that Harvey exhibited behavior toward RN James to limit his interaction with RN James, and that RN James did not provide Harvey with medical treatments. Instead, the parties dispute the subjective component – whether RN James, with scienter "equivalent to criminal recklessness", *Rhinehart*, 894 F.3d at 738, failed to provide Harvey necessary medical care despite being aware of the care's necessity. Specifically, the parties dispute whether Harvey's behavior was so severe as to warrant RN James's decision to not treat Harvey.

The record contains three pieces of evidence that speak to the February 19, 2014 incident: Harvey's medical records (ECF No. 52-6), RN James's affidavit (ECF No. 52-5), and Harvey's deposition testimony (ECF Nos. 52-2, 53-1).

As shown in the excerpts below, Harvey's medical records show that RN James went to Harvey on February 19, 2020 to treat Harvey, but Harvey refused the treatment by choosing to not acknowledge her.  (ECF No. 52-6, PageID.880.)  Harvey's medical records also show that RN James followed up with Harvey the next day to discuss his refusal of treatment and the consequences of refusing treatment, and then

14

presented Harvey with a Right of Refusal (ROR) form.  (*Id.*, PageID.881.)  Harvey

was agitated and stated that he "aint signing nothing." (*Id.*)

### Harvey's Medical Record from February 19, 2014 <br> (ECF No. 52-6, PageID.880)

#### MICHIGAN DEPARTMENT OF CORRECTIONS

| | |
|---|---|
| PATIENT: | WAYNE HARVEY |
| INMATE ID: | 147594 |
| LOCATION: | MBP |
| DATE: | 02/19/2014 6:13 PM |
| CURRENT USER: | Brenda L. James RN |

## INPATIENT NURSING PROGRESS / SOAP NOTE

**Inpatient Status:** Infirmary
**Note Type:** Daily

**Subjective:**
I would prefer not to have any contact with you.

**Objective:**
Entered prisoner's room to administer evening dose of Lovenox and other medications.  Sitting in bed, watching TV. Refused to make eye contact with this writer and stated the above after I asked him where he would like his injection.  I then asked him if he wished to take the rest of his medications, and he refused to acknowledge me in any manner.

**Plan:**
Refused medications.  Refer to MP for evaluation.

**Harvey's Medical Record for RN James's Follow-Up**
**(ECF No. 52-6, PageID.881-882)**

## MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

| | |
|---|---|
| PATIENT: | WAYNE HARVEY |
| DATE OF BIRTH: | 11/26/1957 |
| DATE: | 02/20/2014 2:43 PM |
| VISIT TYPE: | Provider Visit-unscheduled |

**Chief Complaint/Reason for visit:**
This 56 year old male presents with constitutional.

**History of Present Illness**
1. Constitutional
Additional comments:
Met with prisoner to discuss his recent refusal of medication and lab testing. he presented as angry and defiant. I clearly explained the consequences of the refusing treatment AMA. The prisoner continued to be angry and defiant. I presented him with an ROR to which he responded "I aint signing nothing."

Refusal of treatment (V62.6), Poor.
Plan comments: Pt refused medication and INR testing. He very clearly understands the need for these medical interventions. He is of clear and sound mind to make any and all of his own decisions. He was presented with an ROR which he refused to sign.

**Office Services**
**Instructions / Education**

| Status | Completed | Order | Reason |
|---|---|---|---|
| completed | 02/20/2014 | Discussed non compliance medications | |
| completed | 02/20/2014 | Patient education provided and patient voiced understanding | |

Document generated by: Jayson Vayre, PA 02/20/2014 3:41 PM

(ECF No. 52-6, PageID.881-882.)

    In RN James's affidavit, she attests that she offered Harvey his medical treatments and that Harvey told her that he would like not to have any contact with her.  (ECF No. 52-5, PageID.873.)

    In Harvey's deposition, he paints a slightly different picture of the events. Harvey states that he repeatedly requested to speak with RN James to ask for a consultation with a physician assistant.  (ECF No. 52-3, PageID.830.)  As shown

below, Harvey attests that he never refused his medication, but did behave in such a way as to avoid interacting with RN James.  (*Id.*, PageID.832.)  Harvey explains that his antisocial behavior was not intended to prevent receiving his treatment, but was intended to limit his interaction with RN James to only what is necessary.  (*Id.*)

### Excerpt of Harvey's Deposition (ECF No. 52-3, PageID.832.)

```
12    Q.   Sitting in bed watching TV, refused to make eye contact
13         with this writer and stated the above after I asked him
14         where he would like his injection.  I then asked him if
15         he wished to take the rest of his medication and he
16         refused to acknowledge me in any manner.
17             In the plan is stated:  Refusing medications, refer
18         to MP for evaluation.
19             Do you ever remember refusing to take medication?
20    A.   I never refused my medication, sir.  My intent was to
21         avoid any -- any -- any activity dealing with her,
22         interacting with her to any extent.  I was trying to
23         keep it from being extended -- extended.  I just wanted
24         her to do what she needed to do, which after I had been
25         there, for the time that I had been there she was well
```

(*Id.*)  Harvey also contends that RN James's suggestion that he refused treatment is part of RN James's tactic to portray him as being the difficult person.  However, when pressed about specifics of the Harvey's conversation with RN James on February 19, 2014, he says that he "cannot remember."  (ECF No. 53-1, PageID.927.)

Based on the evidence, there appears to be open questions as to the severity of Harvey's antisocial conduct and whether RN James reacted appropriately.  But there is no evidence to suggest that RN James unjustifiably disregarded Harvey's need for

medical care despite an obvious and serious risk of harm.  RN James visited Harvey on February 19, 2014 to provide Harvey with medical treatment.  During the visit, Harvey conducted himself in such a manner as to avoid interaction with RN James, which does suggest that Harvey refused treatment.  Because of Harvey's behavior, RN James did not provide Harvey with medical treatment.  Regardless of whether RN James's conduct was the best response, there is insufficient "evidence from which a jury could conclude that [RN James] 'so recklessly ignored the risk that [RN James] was deliberately indifferent to it.'"  *Rhinehart*, 894 F.3d at 739.

## VIII.  Eighth Amendment Excessive Force Claim Against RN Gluesing

Not every shove or restraint gives rise to a constitutional violation.  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).  On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law."  *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

In determining whether a prisoner has been subjected to excessive force, the Court must examine both the objective and subjective components of an Eighth Amendment claim.  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock*, 273 F.3d at 702).  First, "[t]he subjective component focuses on the state of

mind of the prison officials." *Williams*, 631 F.3d at 383.  The Court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).    Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. 97, 103 (1976)).  While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Harvey argues that there is sufficient evidence to establish genuine issues of fact as to both the subjective and objective components of claim.  (ECF No. 53, PageID.898-900.)  The undersigned agrees.

Defendants categorically deny that RN Gluesing pulled on Harvey's catheter to induce pain on October 17, 2015.  (ECF No. 52, PageID.803-806; ECF No. 54, PageID.1040-1042.)  In support of Defendants' argument, they direct the Court's attention to RN Gluesing's (ECF Nos. 52-4) and Harvey's deposition testimony (ECF Nos. 52-3).  Harvey also points to RN Gluesing's (ECF No. 53-2) and his own deposition testimony (ECF No. 53-1) as evidence that there are genuine issues of fact.

Harvey's version of the October 17, 2015 incident is as follows.  Harvey was asleep when RN Gluesing came into Harvey's cell.  (ECF No. 52-3, PageID.840.)  RN Gluesing told Harvey that he was there to inspect Harvey's urine bag, which is connected to Harvey's condom catheter.[5]  (*Id.*)  Harvey explained to RN Gluesing that he had not drunk water.  (*Id.*)  RN Gluesing told Harvey that he needed to see Harvey's penis.  (*Id.*, PageID.840-841.)  Harvey responded by questioning RN Gluesing's need.  (*Id.*)  A giggling RN Gluesing then pulled on Harvey's catheter tube four times and left Harvey's cell.  (*Id.*, PageID.841-842.)  The fourth pull was particularly hard.  (*Id.*)  During the pulls, Harvey began yelling in pain, but no one came to his aid.  (*Id.*, PageID.840-842.)

RN Gluesing's deposition paints a different scene.  RN Gluesing says he went to Harvey on October 17, 2015 to inspect Harvey's urine bag, which was attached to Harvey's condom catheter.  After seeing how low the urine bag was, RN Gluesing lifted the urine bag to determine whether there was a kink or an air lock.  As RN Gluesing explained that if there was a blockage, Harvey would likely develop a urinary tract infection.  Lifting the urine bag and inspecting the entire length of the connected tubing is how nurses locate and resolve possible blockages.  But Harvey would not permit RN Gluesing to inspect the tubing any higher than Harvey's knee.  At which point, RN Gluesing asked Medical Provider Montgomery to see Harvey.

---

[5]    RN Gluesing explained that a condom catheter is a catheter that attaches to a person by enveloping the wearer's penis.  (ECF No. 52-4, PageID.848, 851).  RN Gluesing added that Foley catheters are different because a Foley catheter requires a tube to be inserted into the wearer's penis.  (*Id.*)

After Provider Montgomery left, RN Gluesing returned to Harvey's cell and again lifted the urine bag.  In response, Harvey became agitated and started to yell.  RN Gluesing added that it would be possible to cause pain by pulling on the catheter tube but noted that the tube is attached with an adhesive to Harvey's leg.  RN Gluesing added that he was then – as he is now – under the impression that Harvey cannot feel anything below the waist based on what Harvey told him.  But RN Gluesing admitted that he could not be certain as to whether Harvey had no feeling below the waist because his belief is based on Harvey's self-diagnosis.

The competing versions of the October 17, 2015 incident establish genuine issues of fact regarding both the subjective and objective components.  The subjective component is satisfied if RN Gluesing's conduct on October 17, 2015 was intended to be "malicious[] and sadistic[] to cause harm." *Hudson*, 503 U.S. at 7.  In Harvey's version of the events, RN Gluesing did not explain why he needed to see Harvey's penis, pulled hard on Harvey's catheter tube four times despite Harvey's yelling, and RN Gluesing giggled while he pulled Harvey's catheter tube.  In RN Gluesing's version of the events, RN Gluesing noticed a potentially serious medical issue and attempted to address it.  Because the undersigned draws all justifiable inferences in favor of Harvey, it is the opinion of the undersigned that there is a genuine issue of fact as to whether RN Gluesing's conduct on October 17, 2015 was intended to be malicious and sadistic to cause harm.

The objective component is satisfied if RN Gluesing's conduct inflicted pain that was "sufficiently serious." *Williams*, 631 F.3d at 383.  If RN Gluesing's conduct

21

is malicious and sadistic, then injury to Harvey need not be evident.  *Hudson*, 503 U.S. at 9.  As noted above, there is a genuine issue of fact as to whether RN Gluesing's conduct was malicious and sadistic.  Therefore, Harvey need not present a serious injury to satisfy the objective component, but Harvey must show that RN Gluesing's conduct was malicious and sadistic with an intent to cause harm.  According to Harvey's version of events, a giggling RN Gluesing pulled on Harvey's catheter to cause Harvey pain.  And Harvey allegedly cried out in pain because of RN Gluesing's conduct.  Harvey's description is in stark contrast to RN Gluesing's, where RN Gluesing only lifted Harvey's urine bag to determine whether there was a blockage stopping urine drainage.  Because the undersigned again draws all justifiable inferences in favor of Harvey, the undersigned concludes that there is a genuine issue of fact as to whether RN Gluesing's conduct inflicted pain that was sufficiently serious.

## IX.    Qualified Immunity

As an alternative argument, Defendants argue Harvey's claims against RNs James and Gluesing are barred by the doctrine of qualified immunity.  (ECF No. 52, PagheID.810-813.)  Harvey asserts that the claims should not be dismissed during this summary judgment proceeding, because the issue of qualified immunity turns on factual questions that should be decided by a jury.  (ECF No. 53, PageID.900-902 (citing *Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012); *Henry v. City of Flint, Michigan*, 814 F. App'x 973 (6th Cir. 2020)).

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court

considers the state of the law at the second step.  As the Supreme Court has observed,

"this Court's case law does not require a case directly on point for a right to be clearly

established, [but] existing precedent must have placed the statutory or constitutional

question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal

quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct.

305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a
> sufficiently clear foundation in then-existing precedent.
> The rule must be "settled law," *Hunter v. Bryant*, 502 U.S.
> 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per
> curiam), which means it is dictated by "controlling
> authority" or "a robust 'consensus of cases of persuasive
> authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074
> (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692,
> 143 L.Ed.2d 818 (1999)). It is not enough that the rule is
> suggested by then-existing precedent. The precedent must
> be clear enough that every reasonable official would
> interpret it to establish the particular rule the plaintiff
> seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct.
> 2088. Otherwise, the rule is not one that "every reasonable
> official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal
> quotation marks omitted).
>
> The "clearly established" standard also requires that the
> legal principle clearly prohibit the officer's conduct in the
> particular circumstances before him. The rule's contours
> must be so well defined that it is "clear to a reasonable
> officer that his conduct was unlawful in the situation he
> confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct.
> 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree
> of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136
> S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We
> have repeatedly stressed that courts must not "define
> clearly established law at a high level of generality, since
> doing so avoids the crucial question whether the official
> acted reasonably in the particular circumstances that he or
> she faced." *Plumhoff*, *supra*, at 2023 (internal quotation
> marks and citation omitted). A rule is too general if the

> unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

For the reasons set forth in Section VII, Harvey failed to establish that RN James violated one of Harvey's clearly establish constitutional rights under the Eighth Amendment.  As a result, the doctrine of qualified immunity also bars Harvey's Eighth Amendment deliberate indifference claim.

For the reasons set forth in Section VIII, there is a genuine issue of fact as to whether RN Gluesing violated Harvey's clearly established constitutional rights under the Eighth Amendment.  A jury must determine the outstanding issue of fact with respect to the constitutional violation.  Furthermore, if the jury adopted Harvey's version of events, RN Gluesing would have engaged in conduct that a reasonable officer would have known violated the Constitution.  *See Green*, 681 F.3d at 864 (6th Cir. 2012) ("Where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.").  Therefore, the undersigned concludes that it would be premature dismiss Harvey's claim against RN Gluesing at the summary judgment stage.

The application of the qualified immunity doctrine to Harvey's claim that RN James interfered with or influenced his transfer is a close call.  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or

25

sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  As noted above, to establish a cognizable Eighth Amendment cruel and unusual punishment claim, Harvey must still establish the objective and subjective components. *See Farmer*, 511 U.S. at 834.  The objective component is satisfied when there is an obvious substantial risk of serious harm because of the conditions of confinement.  The subjective component is satisfied if RN James was aware of a serious and substantial risk of serious harm and was deliberately indifferent to it.

As set forth above in Section VI, a genuine issue of material fact exists with respect to whether RN James violated Harvey's rights under the Eighth Amendment by interfering with or influencing the MDOC's decision on where to incarcerate Harvey.  That conclusion answers the first prong of the qualified immunity analysis. But Harvey has not shown that the right at issue was so clearly established that a reasonable officer would have known that his conduct violated it.  During Harvey's deposition, he contended that he experienced on-going poor treatment by MDOC staff at MBP, and that his cell's lack of railing in the MBP's medical wing posed a serious and substantial risk of serious harm.  (*See* ECF Nos. 52-3, 53-1.)  Thus, according to Harvey, RN James's interference in Harvey's transfer would expose Harvey to a greater risk of harm.  In the opinion of the undersigned, this contention does not overcome RN James's reliance on qualified immunity.  With respect to the MDOC's

staff's conduct and the bed configuration (i.e. lack of railings), Harvey's allegations do not amount to the deprivations of medical care or necessities envisioned in *Rhodes*, which viewed "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement" as Eighth Amendment violations.  452 U.S. at 348.

## X.     Recommendation

The undersigned respectfully recommends that the Court dismiss all of Harvey's against RN James and his Eighth Amendment claim against RN Gluesing in his official capacity.  The undersigned also respectfully recommends that the Court dismiss all Harvey's claims against RN LaForest without prejudice under Fed. R. Civ. P. 4(m).  If the Court adopts this recommendation, only Harvey's claim against RN Gluesing in his personal capacity will remain.


Dated:   November 18, 2020               /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).